IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RE/MAX OF NEW ENGLAND, INC. and
RE/MAX, LLC,

                  Plaintiffs,

v.

PRESTIGE REAL ESTATE, INC., LAER
REALTY PARTNERS, STACEY
ALCORN and ANDREW F. ARMATA,

                  Defendants.

Civil Action No. 14-cv-_____

**COMPLAINT**

## INTRODUCTORY STATEMENT

Plaintiff RE/MAX of New England, Inc. ("RE/MAX New England") is a regional

subfranchisor of plaintiff RE/MAX, LLC (together, "Plaintiffs") and sublicenses to franchisees

the right and obligation to conduct real estate franchise operations under the RE/MAX® brand

and franchise system in New England.  Prestige Real Estate, Inc. ("Prestige") is a RE/MAX New

England franchisee that operated thirteen (13) RE/MAX® brand franchised real estate agencies

primarily located in the Commonwealth.  On April 14, 2014, with no warning or advance notice,

Prestige purported to unilaterally terminate its franchise agreements with RE/MAX New

England and announced the formation of an entity called LAER Realty Partners that would from

that day forward take over its former RE/MAX franchised real estate businesses.

Notwithstanding the passage of almost four (4) weeks from its announced departure from the

RE/MAX system, Prestige, through LAER Realty Partners, continues to use RE/MAX

trademarks without authorization.  Its unauthorized use of RE/MAX marks confuses the public,

intentionally fosters the false impression that LAER Realty Partners is related or a successor to

RE/MAX New England, and amounts to unfair competition and trademark infringement.

Accordingly, Plaintiffs bring this Complaint for trademark infringement, false designation of

origin and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114 and 1125, breach of

contract and specific performance under Massachusetts law, and for unfair and deceptive acts

and practices under Mass. Gen. Laws Ch. 93A, §§ 1-11.

## PARTIES

1.      Plaintiff RE/MAX New England is a Massachusetts corporation with a principal

place of business located at 8 Strathmore Road, Natick, Massachusetts 01760.

2.      Plaintiff RE/MAX, LLC, which was formerly known as RE/MAX International,

Inc., is a Delaware limited liability company with a principal place of business at 5075 South

Syracuse Street, Denver, Colorado 80237.

3.      Defendant Prestige is a Massachusetts corporation with a principal place of

business located at 173 Chelmsford Street, Chelmsford, Massachusetts 01824.

4.      Defendant LAER Realty Partners is a Massachusetts partnership with a principal

place of business located at Chelmsford Street, Chelmsford, Massachusetts 01824.

5.      Upon information and belief, defendant Stacey Alcorn ("Alcorn") is an adult

individual who resides at 7 Sleigh Ride Lane, Littleton, Massachusetts 01460.

6.      Upon information and belief, defendant Andrew F. Armata ("Armata," and

together with Alcorn, ("Prestige Owners")) is an adult individual who resides at 15 Ross Lane,

Middleton, Massachusetts 01949.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over Plaintiffs' claims for trademark

infringement, and false designation of origin and unfair competition pursuant to 15 U.S.C. §

1121 and 28 U.S.C. §§ 1331 and 1338(a) because these claims arise under the Lanham Act, 15

U.S.C. §§ 1051, *et seq.*  Supplemental jurisdiction over the related state law claims is conferred

upon this Court by 28 U.S.C. § 1367(a).

8.      This Court has personal jurisdiction over Prestige and LAER Realty Partners

because they are Massachusetts entities with principal places of business in this judicial district,

and they have conducted and routinely conduct, solicit and/or transact business within this

judicial district and elsewhere in Massachusetts, derive substantial revenue from the sale and

distribution of goods or services within this judicial district and elsewhere in Massachusetts,

and/or have otherwise made or established constitutionally sufficient contacts in this judicial

district to permit this Court's exercise of personal jurisdiction.  This court has personal

jurisdiction over Alcorn and Armata because they are individuals who reside in Massachusetts.

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a

substantial part of the acts complained of occurred in this judicial district and each party is

subject to personal jurisdiction in this judicial district.

## FACTS

### RE/MAX Trademarks

10.      Throughout the United States, a network of franchisees and affiliated independent

contractor/sales associates provide real estate brokerage services under the RE/MAX trademarks

(the "RE/MAX Network") pursuant to the authorization of plaintiff RE/MAX, LLC. The

RE/MAX Network provides real estate services globally, with a presence in more than ninety-

five (95) countries and on six (6) continents.

11.      Since as early as 1985, RE/MAX New England has operated as New England

regional subfranchisor of the RE/MAX Network, under authorization of RE/MAX, LLC.

12.     Since at least as early as 1974, those affiliated with the RE/MAX Network have provided real estate brokerage services in interstate commerce in the United States in connection with the RE/MAX and REMAX word marks (the "RE/MAX Word Marks") and in connection with a service mark consisting of a rectangular sign displaying three horizontal bars, the top of which is red, the middle of which is white, and the bottom of which is blue (the "red-over-white-over-blue Design").

13.     Since at least as early as 1979, those affiliated with the RE/MAX Network have provided real estate brokerage services in interstate commerce in the United States in connection with a service mark consisting of a hot air balloon design (the "Balloon Marks").

14.     RE/MAX, LLC owns U.S. Trademark Registration No. 1,139,014 for the RE/MAX Word Mark, Registration Nos. 1,173,586 and 2,850,985 for the Balloon Mark, and Registration Nos. 1,720,592 for the red-over-white-over-blue Design, among others.

15.     RE/MAX, LLC owns several additional U.S. trademark registrations for a family of marks that include the RE/MAX word Marks, the red-over-white-over-blue Design, and/or the balloon Marks, including U.S. Trademark Registration Nos. 1,691,854; 2,106,387; 2,119,607; and 2,403,626.

16.     All of the above U.S. Trademark Registrations have achieved incontestability under 15 U.S.C. § 1065 and copies of the certificates of registration are attached hereto as **Exhibit 1**.

17.     Prestige, Alcorn and Armata were put on notice of RE/MAX, LLC's registered trademark rights in the RE/MAX Marks in the numerous franchise agreements they signed and franchise disclosure documents they received over the many years they conducted business as RE/MAX franchisees.

18.     The RE/MAX Marks are used on a variety of advertising media including listing signs, business cards, Internet web sites, directional signs, open house signs, hot and cold air balloons, television commercials, billboards, bus stop benches, banners, and other advertising and promotional items.  A sample of RE/MAX signage featuring the RE/MAX Marks is set forth below:



19.     Since 1974, RE/MAX, LLC, RE/MAX of New England and the RE/MAX Network have invested billions of dollars to develop, promote, and maintain the RE/MAX Marks, among other marks owned by RE/MAX, LLC, in the United States and worldwide.

20.     Brokers and associates in the RE/MAX Network have used the RE/MAX Marks in connection with representing either the buyer or the seller more than 25 million times in real estate sales transactions in the United States and worldwide, resulting in over two and a half trillion dollars in sales volume since 1974.

21.     At any given time there are hundreds of thousands of RE/MAX property listings in the United States, almost all of which display prominently a listing sign showing the RE/MAX Marks, similar to that set forth above.

22.     Overall, the public has come to recognize and understand that the RE/MAX Marks distinguish and identify the RE/MAX Network, and its reputation for excellence throughout the United States, and the world.

23.     At all times relevant to the instant action, RE/MAX, LLC has licensed to RE/MAX New England the right to use the RE/MAX Marks, and to permit RE/MAX New England to extend to its franchisees a limited license to use the RE/MAX Marks.

24.     The RE/MAX Marks are strong and distinctive source identifiers that are prominently displayed on or in connection with providing real estate brokerage services.  As a result of Plaintiffs' extensive use and promotion of the RE/MAX Marks, they have built a valuable reputation and substantial goodwill that is symbolized by these marks.  The purchasing public has come to recognize and associate the RE/MAX Marks exclusively with Plaintiffs and treats them as synonymous.

**Defendants' Franchise Relationship with RE/MAX**

25.     In or around 2000, Prestige, Alcorn and Armata recognized the strength and popularity of the RE/MAX brand and decided to join the RE/MAX franchise network.

26.     The RE/MAX franchise agreements they signed over the years authorized Prestige to operate as a RE/MAX franchisee with a limited license to use the RE/MAX Marks.

27.     During the course of Prestige's relationship with RE/MAX New England, Prestige opened thirteen (13) RE/MAX franchised offices in Burlington, Chelmsford, Dracut, Danvers, East Longmeadow, Groton, Methuen, Marlborough, Northborough, Topsfield, Westford, and Wilbraham, Massachusetts and Pelham, New Hampshire (the "Prestige Franchise Locations").  Each Prestige Franchise Location operated under a separate office-specific franchise agreement.

28.     In consideration for RE/MAX New England entering a franchise relationship with Prestige, Alcorn and Armata signed Guaranty and Assumption of Obligation agreements that are incorporated into each franchise agreement.  As guarantors of each franchise agreement, Alcorn and Armata agreed, among other items, to be personally liable, jointly and severally, for breach of any obligation under the agreements.  Alcorn and Armata are also directly, personally obligated as Prestige Owners under certain material provisions of the agreements.

29.     Pursuant to Section 6 of the Franchise Agreements, Prestige is required to make certain financial payments to RE/MAX New England and/or RE/MAX, LLC, including, without limitation, monthly management fee, monthly promotion fee, monthly transaction fee, monthly Hot Air Balloon Fund fee and annual dues.

30.     Section 5.F of each franchise agreement includes an in-term non-compete agreement whereby neither Prestige nor the Prestige Owners shall "operate, manage, own, have an interest in or become affiliated with in any other way (1) any non-RE/MAX real estate services business; or (2) any other business or enterprise offering products or services that directly or indirectly compete with the products and services" offered by RE/MAX New England, RE/MAX, LLC and other RE/MAX franchisees during the term of the agreement.

31.     Section 2.E of the franchise agreements allows each Prestige Franchise Location, with RE/MAX New England's permission, to operate as a RE/MAX franchise on a month-to-month basis at the end of the agreement's term until a renewal agreement is executed.  However, these "hold-over" provisions explicitly require that the Prestige Franchise Locations operate "under the terms and conditions of *the franchise agreement and other agreements being used by [RE/MAX] at the time of the expiration of the [t]erm* . . . ." during the any hold over period (emphasis added).

**Prestige's Abandonment of its Franchise Relationship with RE/MAX New England**

32.     The durational term for the Dracut agreement expired on April 12, 2012; the
Northborough agreement expired on February 25, 2013 and the Groton agreement expired on
March 19, 2014.  All other franchise agreements between Prestige and RE/MAX New England
would remain in full force and effect but for Prestige's unilateral and unlawful conduct as
described below.

33.     After the franchise agreements for the Dracut, Northborough and Groton locations
expired, each of those locations operated as a RE/MAX franchise on a month-to-month basis
pursuant to Section 2.E of the franchise agreements.

34.     Prestige and RE/MAX New England frequently discussed the three (3) expired
franchise agreements.  In fact, RE/MAX New England provided Prestige new franchise
agreements and related documentation necessary to properly renew the expired agreements.  On
many occasions, Prestige expressed its desire to renew the expired franchise agreements and
volunteered a timeline and payment plan for these renewals.  At no time did Prestige raise
objections to entering into the new franchise agreements.

35.     Despite their statements to RE/MAX New England that they intended to renew
the expiring franchise agreements, Alcorn and Armata were preparing to leave the RE/MAX
system without any advance notice and in a manner designed to injure RE/MAX New England
during the busy spring real estate season.

36.     On April 14, 2014, Prestige, by a lawyer, announced its departure from the
RE/MAX system by demand letter to RE/MAX New England alleging spurious and make-
weight violations of Massachusetts General Laws, Chapter 93A ("93A Demand Letter").  The
93A Demand Letter made unfounded allegations that RE/MAX New England had interfered with

Prestige's attempts to expand its business and that RE/MAX New England's newest franchise agreement included an unfair post-termination non-compete provision.

37.     By the 93A Demand Letter, Prestige, Alcorn and Armata announced the end of the charade they had perpetrated for months – that they wanted and intended to renew the expiring franchise agreements – and instead revealed their true intentions to compete unfairly with RE/MAX New England by abandoning their franchise relationship for all thirteen (13) Prestige Franchise Locations.

38.     Although the 93A Demand Letter claims that Prestige will immediately "de-identify all of its locations," return all confidential information to RE/MAX New England, and will cease doing business as a RE/MAX franchisee, it has not done so.  Instead, Prestige, Alcorn and Armata have embarked on a scheme to continue use of the RE/MAX Marks for as long as possible to extract the maximum good will from them while they attempt to establish good will for their newly created and unknown entity, LAER Realty Partners.

**Prestige's Breach of the Franchise Agreements and Post-Termination Obligations**

39.     Prestige had no right to terminate prematurely the franchise agreements for the Burlington, Chelmsford, Danvers, East Longmeadow, Methuen, Marlborough, Pelham, Topsfield, Westford, and Wilbraham franchise locations.  Section 2.B of each franchise agreement requires Prestige to perform all of the obligations under the franchise agreement and to "continuously exert [its] best efforts to promote and enhance the business" for the agreement's full term.

40.     Since the term for ten (10) franchise locations have not expired, Prestige owes, and will continue to owe to RE/MAX New England, all fees due under Section 6 of the franchise agreements, including, without limitation, the monthly management fee, monthly promotion fee,

9

monthly transaction fee, and monthly Hot Air Balloon Fund fee.  Additionally, Prestige owes Plaintiffs all applicable late fees and interest as provided under Section 6 of the franchise agreements.

41.     As of May 2, 2014, Prestige has not fulfilled all of its financial obligations to RE/MAX New England under the franchise agreements and owes RE/MAX New England at least $900,000.

42.     Furthermore, Prestige is required to pay annual dues to RE/MAX, LLC for each Prestige sales associate pursuant to Section 6 of the franchise agreements.

43.     As of May 2, 2014, Prestige is in arrears on its annual dues payments to RE/MAX, LLC under the franchise agreements and owes RE/MAX, LLC at least $62,413.

44.     Additionally, for the Dracut, Groton and Northborough franchise locations, Prestige has outstanding financial obligations that include the following: (1) all applicable monthly fees under Section 6 of the applicable franchise agreements for the month of March 2014 and pro-rata through April 14, 2014, including, without limitation, the monthly management fee, monthly promotion fee, month transaction fee and the Hot Air Balloon Fund fee; (2) late fees pursuant to Section 6.J of the applicable franchise agreements; (3) as damages, two months' of all monthly fees billed to Prestige pursuant to Section 6 of the agreements, including, without limitation the monthly management fee, monthly promotion fee, monthly transaction fee and monthly Hot Air Balloon Fund fee for failing to provide thirty-day written notice to RE/MAX New England.

45.     Prestige's actions are also clear violations of the covenants against competition contained in the franchise agreements.

46.     Since the franchise agreement's term for ten (10) Prestige Franchise Locations remain in effect, Prestige's action to associate them with a competing business—LAER Realty Partners—are patent violations of the in-term non-compete provision under Section 5.F of the agreements.

47.     Because Prestige's Dracut, Northborough and Groton locations operated on a month-to-month basis under the terms and conditions of the most recent agreement used by RE/MAX New England, Prestige is subject to the post-termination non-compete provision under Section 14.I of RE/MAX New England's current franchise agreement.   By this clause, Prestige must not "directly or indirectly, operate, manage, own or have any ownership interest in any business that is a licensee or franchisee of any franchising organization or network that competes" with RE/MAX New England or RE/MAX, LLC for one-year after the date the agreement is terminated or expired.

48.     Prestige's actions to include the Dracut, Northborough and Groton locations in LAER Realty Partners patently violate Prestige's post-termination non-compete obligations.

49.     Prestige, by virtue of transferring the franchise locations to LAER Realty Partners, breached Section 12.B of the franchise agreements which prohibits Prestige from transferring or otherwise disposing of the "[a]greement, the Franchise, all or a substantial portion of the assets of the Franchise or Office, or any interest" in the Prestige Franchise Locations without RE/MAX New England's consent.

50.     By virtue of Prestige's abandonment of its franchise relationship with RE/MAX New England, Prestige must completely fulfill the post-termination obligations required under Section 14.B of the franchise agreements.  Section 14.B of each franchise agreement jointly and

severally obligates Prestige and Alcorn and Armata, as Prestige Owners to, without limitation, do the following:

i.  Prestige and Prestige Owners must "**immediately** and clearly distinguish [its] operations from RE/MAX New England" and to refrain from holding itself out "to the public in any way as being or having been affiliated with [RE/MAX New England]."

ii.  Prestige and Prestige Owners must immediately remove the RE/MAX Marks from, without limitation, all letterhead, stationary, printed matter, advertising and "other materials."

iii.  Prestige and Prestige Owners must refrain from using any "sign, trade dress or identity scheme . . . comprised of a three horizontal bar design."

iv.  Prestige and Prestige Owners must immediately take action to "cancel all fictitious or assumed names" which reference the RE/MAX Marks including "any Internet or World Wide Web listing or address."

v.  Prestige and Prestige Owners must "promptly assign all telephone numbers" listed for the offices to RE/MAX New England.

vi.  Prestige and Prestige Owners must assign to RE/MAX New England or RE/MAX, LLC all domain names Prestige owns that incorporates the RE/MAX Marks.

vii.  Prestige and Prestige Owners must refrain from using the RE/MAX Marks, including, the red-over-white-over-blue horizontal bar design.

51.  Section 14 of the franchise agreements includes a damages provision that requires Prestige and Prestige Owners to pay RE/MAX New England $500 per day in liquidated damages for every day Prestige is in breach of its obligations under Section 14.B.

52.  Despite the unambiguous language of 14.B of the franchise agreements, Prestige continues unequivocally to use the RE/MAX Marks in connection with its services without RE/MAX New England's license or authorization.  Even though Prestige purported to abandon its franchise relationship with RE/MAX New England on April 14, 2014, photographs taken

between April 30, 2014 and May 12, 2014 demonstrate that Prestige and LAER Realty Partners

brazenly use the RE/MAX Marks  without RE/MAX's approval:

### Chelmsford, MA



### Methuen, MA

  

### Dracut, MA                      Groton, MA

 

### Northborough, MA

  

### Pelham, New Hampshire

  

### East Longmeadow, Massachusetts

 

### Burlington, Massachusetts          ### Topsfield, Massachusetts

 

### Westford, Massachusetts          ### Wilbraham, Massachusetts

 

**Danvers, Massachusetts**



**Groton, Massachusetts**

  

**Real Estate Listing Sites**

  

  



53.     Furthermore, Prestige and LAER Realty Partners' real estate agents continue to use the RE/MAX Marks in their individual websites and in their email addresses.  *See* screenshots in **Exhibit 2** attached hereto.

54.     Additionally, Prestige uses signs that comprise a three horizontal bar design in direct breach of Section 14.B of the franchise agreements:

 

55.     Not only has Prestige failed to assign its telephone numbers to RE/MAX New England as required by the franchise agreements, but as of May 13, 2014, as depicted on the LAER Reality Partners website, Prestige *continues* actively to market these numbers for its newly formed LAER Realty Partners in direct violation of the franchise agreements.  *See* http://www.laerrealty.com/agentslocations/ (last accessed May 13, 2014) and **Exhibit 3** attached hereto.

56.     According to the WHOIS records, as of May 13, 2014, Prestige, and/or the Prestige Owners are still the record owner of at least three domain names – <remaxprestige.com>, <remaxprestige.org>, and <remaxprestige.net> wholly incorporating the

RE/MAX Marks.  *See* **Exhibit 4** attached hereto.  Prestige has not assigned these domain names

to RE/MAX New England or RE/MAX, LLC as required under Section 14.B of the franchise

agreements.

57.     In addition, Section 4.A of each franchise agreement prohibits Prestige from using

the RE/MAX Marks as part of a "formal corporate or legal name."

58.     Upon information and belief, Prestige filed, established and registered the

RE/MAX Prestige Charitable Fund, LLC under Massachusetts law, which wholly incorporates

the RE/MAX Mark in direct violation of the franchise agreements.  *See* **Exhibit 5** attached

hereto.

<u>COUNT I (by Plaintiff RE/MAX, LLC)</u>
**Federal Trademark Infringement**
**(15 U.S.C. § 1114)**

59.     Plaintiffs specifically incorporate and reference the allegations asserted in each of

the preceding paragraphs, as if fully set forth herein.

60.     RE/MAX, LLC is the owner of all rights, title, and interests in and to the

RE/MAX Marks.  Plaintiffs have held rights in and to the RE/MAX Marks long before Prestige

and LAER Realty Partners' use of these marks, and have priority over any use of the RE/MAX

Marks by Prestige and LAER Realty Partners.

61.     Prestige and LAER Realty Partners continue to use the RE/MAX Marks despite

Prestige's purported abandonment of its limited license to use these marks under the franchise

agreements.

62.     Prestige and LAER Realty Partners' unauthorized use of the RE/MAX Marks for

competing goods and services is likely to cause confusion, mistake, and/or deception among the

general public as to the source of the Prestige and LAER Realty Partners' goods and services

and/or commercial activities, or as to whether their business is sponsored by, affiliated with, or otherwise connected to RE/MAX, particularly given that Prestige is a former franchisee of RE/MAX New England.

63.     If permitted to continue, Prestige and LAER Realty Partners' actions will nullify RE/MAX, LLC's right to exclusive use of its trademarks, free from infringement, and will have a substantial and adverse effect on RE/MAX's existing and projected future interstate business of marketing products and services identified by its trademarks.

64.     Prestige and LAER Realty Partners' actions constitute trademark infringement, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, and these actions have caused and, unless enjoined by this Court, will continue to cause, a likelihood of confusion and public deception in the marketplace, and injury to the public and to RE/MAX, LLC's goodwill and reputation for which RE/MAX, LLC has no adequate remedy at law.

65.     Prestige and LAER Realty Partners' actions are willful, knowing, and intentional.

66.     As a direct and proximate result of Prestige and LAER Realty Partners' trademark infringement, they have caused, and are likely to continue causing, substantial injury to the public and to RE/MAX, LLC, and RE/MAX, LLC is entitled to preliminary and permanent injunctive relief and to recover Prestige and LAER Realty Partners' profits, actual damages, enhanced profits and damages, reasonable attorneys' fees and costs, treble damages in an amount to be determined at trial, and an order for destruction, pursuant to 15 U.S.C. §§ 1116, 1117, 1118 and 1125.

67.     Alcorn and Armata are liable for any relief obtained against Prestige or LAER Realty Partners by virtue of their direct obligations as Prestige Owners under the franchise agreements for the Prestige Franchise Locations, by virtue of their personal guarantees of each of

18

the franchise agreements, and as the principal officers of Prestige and LAER Realty Partners

who directed its wrongful conduct.

**COUNT II (by all Plaintiffs)**
**False Designation of Origin and Unfair Competition (15 U.S.C. § 1125(a))**

68.     Plaintiffs specifically incorporate and reference the allegations asserted in each of

the preceding paragraphs, as if fully set forth herein.

69.     RE/MAX, LLC is the owner of all right, title, and interest in and to the RE/MAX

Marks.  Plaintiffs have held rights in and to the RE/MAX Marks long before any use of these

marks by Prestige or LAER Realty Partners, and have priority over any use of the RE/MAX

Marks by them. Prestige and LAER Realty Partners' use of the RE/MAX Marks has caused and

will continue to cause likely confusion, or to cause mistake, or to deceive as to the origin,

sponsorship, or approval of Prestige and LAER Realty Partners' goods, services or commercial

activity by Plaintiffs.

70.     If permitted to continue, Prestige and LAER Realty Partners actions will nullify

RE/MAX, LLC's right to exclusive use of its trademarks, free from infringement, and will have a

substantial and adverse effect on RE/MAX, LLC's existing and projected future interstate

business of marketing products and services identified by its trademarks.  Additionally, Prestige

and LAER Realty Partners' actions will nullify RE/MAX New England's right to franchise the

operation of RE/MAX offices under the RE/MAX Marks.

71.     Prestige and LAER Realty Partners' continued use of the RE/MAX Marks are

creating a false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C.

§ 1125(a), and their activities have caused and, unless enjoined by this Court, will continue to

cause a likelihood of confusion and public deception in the marketplace, and injury to Plaintiffs'

goodwill and reputation for which Plaintiffs have no adequate remedy at law.

19

72.     Prestige and LAER Realty Partners' actions are willful, knowing, and intentional.

73.     As a direct and proximate result of Prestige and LAER Realty Partners' actions, they have caused, and are likely to continue causing, substantial injury to the public and to Plaintiffs, and Plaintiffs are entitled to preliminary and permanent injunctive relief and to recover Prestige and LAER Realty Partners' profits, actual damages, enhanced profits and damages, reasonable attorneys' fees and costs, treble damages in an amount to be determined at trial, and an order for destruction, pursuant to 15 U.S.C. §§ 1116, 1117, 1118 and 1125.

74.     Alcorn and Armata are liable for any relief obtained against Prestige or LAER Realty Partners by virtue of their direct obligations as Prestige Owners under the franchise agreements for the Prestige Franchise Locations, by virtue of their personal guarantees of each of the franchise agreements, and as the principal officers of Prestige and LAER Realty Partners who directed its wrongful conduct.

## COUNT III (by all Plaintiffs)
### Breach of Contract-Damages

75.     Plaintiffs specifically incorporate and reference the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

76.     The franchise agreements are valid and enforceable contracts which Prestige is obligated to honor.

77.     RE/MAX New England has substantially performed all conditions and obligations imposed on it under the franchise agreements.

78.     Prestige's ineffective attempt to terminate the franchise agreements associated with Prestige's Burlington, Chelmsford, Danvers, East Longmeadow, Methuen, Marlborough, Pelham, Topsfield, Westford, and Wilbraham locations is in direct breach of Section 2.B of the franchise agreements.  Given that Prestige has no right to prematurely terminate any of the

franchise agreements, Prestige is liable to RE/MAX New England for full performance damages which include all fees due for the full term of the applicable agreements, including, without limitation, the monthly management fee, monthly promotion fee, monthly transaction fee, and the monthly Hot Air Balloon Fund fee pursuant to Section 6 of the agreements.

79.     Prestige is liable to RE/MAX New England and/or RE/MAX, LLC for outstanding financial obligations for the Dracut, Groton and Northborough franchise locations, that include the following: (1) all applicable monthly fees under Section 6 of the applicable franchise agreements for the month of March 2014 and pro-rata through April 14, 2014, including, without limitation, the monthly management fee, monthly promotion fee, month transaction fee and the Hot Air Balloon Fund fee; (2) late fees pursuant to Section 6.J of the applicable franchise agreements; (3) as damages, two months' of all monthly fees billed to Prestige pursuant to Section 6 of the agreements, including, without limitation the monthly management fee, monthly promotion fee, monthly transaction fee and monthly Hot Air Balloon Fund fee for failing to provide thirty-day written notice to RE/MAX New England.

80.     Prestige is in arrears on its annual dues obligations to RE/MAX, LLC pursuant to Section 6 of the franchise agreements.  As of May 2, 2014, Prestige owes RE/MAX, LLC at least $62,413 for annual dues in addition to any applicable late fees or interest pursuant to the franchise agreements.

81.     Prestige, by virtue of its attempt to transfer the franchise locations to LAER Realty Partners, breached Section 12.B of the franchise agreements which prohibits Prestige from transferring or otherwise disposing of the "[a]greement, the Franchise, all or a substantial portion of the assets of the Franchise or Office, or any interest" in the Prestige Franchise Locations without RE/MAX New England's consent.

82.     Prestige's purported abandonment of its franchise relationship with Plaintiffs breaches many of its post-termination obligations under Section 14.B of the franchise agreements including, without limitation, Prestige's obligation to assign to RE/MAX New England all telephone numbers associated with the Prestige Franchise Locations and its obligation to assign to RE/MAX New England or RE/MAX, LLC all domain names Prestige owns that incorporates the RE/MAX Marks.

83.     Given Prestige's breach of its obligations under Section 14.B of the franchise agreements, Prestige and the Prestige Owners are liable for liquidated damages in the amount of $500 per day, for each franchise agreement, for every day that Prestige fails to fulfill its obligations after the passage of an initial 10-day waiting period.

84.     Prestige is liable for additional damages in an amount to be proven at trial.

85.     Alcorn and Armata are liable for any relief obtained against Prestige or LAER Realty Partners by virtue of their direct obligations as Prestige Owners under the franchise agreements for the Prestige Franchise Locations, by virtue of their personal guarantees of each of the franchise agreements, and as the principal officers of Prestige and LAER Realty Partners who directed its wrongful conduct.

**COUNT IV (by all Plaintiffs)**
**Breach of Contract-Specific Performance**

86.     Plaintiffs specifically incorporate and reference the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

87.     Section 14.B of the franchise agreements include a provision that require Prestige to assign all telephone numbers associated with the Prestige Franchise Locations to RE/MAX New England upon termination or expiration of the franchise agreements.  In addition, Section 14.B includes a provision that requires Prestige to assign all domain names that incorporate the

RE/MAX Mark to RE/MAX New England or RE/MAX, LLC upon the termination or expiration of the franchise agreements.

88.     Despite Prestige's abandonment of its franchise relationship with RE/MAX New England, Prestige has failed to assign to RE/MAX New England the telephone numbers associated with the thirteen (13) Prestige Franchise Locations and Prestige has failed to assign all domain names it owns that incorporates the RE/MAX Marks.  Plaintiffs have no adequate remedy at law regarding Prestige's obligation to assign applicable telephone numbers and domain names to Plaintiffs.

89.     Additionally, Section 14.B of each franchise agreement requires Prestige to "**immediately** and clearly distinguish [its] operations from RE/MAX New England" and to refrain from holding itself out "to the public in any way as being or having been affiliated with [RE/MAX New England]" upon termination of an applicable agreement.  As demonstrated herein, Prestige has failed to adequately distinguish itself with RE/MAX New England as required under the franchise agreements.  To the contrary, Prestige continues to associate itself with RE/MAX New England in direct violation of the franchise agreements.  Plaintiffs have no adequate remedy at law regarding Prestige's obligation to cease all use of the RE/MAX Marks or any source identifier that belongs to RE/MAX, LLC or RE/MAX New England.

90.     The Franchise Agreements require Prestige to refrain from use of any horizontal bar design in signs, trade dress or any identity scheme used by Prestige after the franchise relationship is terminated.  As demonstrated herein, through LAER Realty Partners, Prestige uses a horizontal bar design that is in direct breach of Section 14.B of the franchise agreements.  Plaintiffs have no adequate remedy at law regarding Prestige's obligation to refrain from use of any horizontal bar design.

91.     As demonstrated herein, Section 5.F of the franchise agreements include an in-term non-compete agreement whereby Prestige must not "operate, manage, own, have an interest in or become affiliated with in any other way (1) any non-RE/MAX real estate services business; or (2) any other business or enterprise offering products or services that directly or indirectly compete with the products and services" offered by RE/MAX New England, RE/MAX, LLC and other RE/MAX franchisees during the term of the agreement.  As demonstrated herein, the term for the Burlington, Chelmsford, Danvers, East Longmeadow, Methuen, Marlborough, Pelham, Topsfield, Westford, and Wilbraham franchise locations were not expired when Prestige moved the franchises to LAER Realty Partners.  Prestige has, thereby, breached the in-term non-compete agreements.  RE/MAX New England has no adequate remedy at law regarding Prestige's obligation to honor the in-term non-compete agreements.

92.     As demonstrated herein, Prestige's Dracut, Northborough and Groton locations are subject to a one (1) year post-termination non-compete agreement.  Prestige breached the franchise agreements when it included the Dracut, Northborough and Groton locations in LAER Realty Partners.  RE/MAX New England has no adequate remedy at law regarding Prestige's obligation to honor the one (1) year post-termination non-compete agreement.

93.     Through the establishment of the RE/MAX Charitable Fund LLC, Prestige has willfully ignored Section 4.A of the franchise agreements which expressly prohibits any use of the RE/MAX Marks as part of a "formal corporate or legal name."  RE/MAX New England has no adequate remedy at law regarding Prestige's obligation to refrain from incorporating the RE/MAX Marks as part of a formal corporate or legal name.

94.     Alcorn and Armata are liable for any relief obtained against Prestige or LAER Realty Partners by virtue of their direct obligations as Prestige Owners under the franchise

agreements for the Prestige Franchise Locations, by virtue of their guarantees of each of the

franchise agreements, and as the principal officers of Prestige and LAER Realty Partners who

directed its wrongful conduct.

## COUNT V (by all Plaintiffs)
## Unfair and Deceptive Acts or Practices
## (Mass. Gen. Laws ch. 93A §§ 2 and 11)

95.     Plaintiffs specifically incorporate and reference the allegations asserted in each of

the preceding paragraphs, as if fully set forth herein.

96.     Prestige and LAER Realty Partners have been using, and continue to use, without

authorization, the RE/MAX Marks, causing a likelihood of confusion or misunderstanding as to

the source, sponsorship, or approval of Prestige and LAER Realty Partners' services, causing a

likelihood of confusion as to their affiliation, connection, or association with Plaintiffs, and/or

otherwise damaging Plaintiffs, the RE/MAX Marks, and the public.  Prestige and LAER Realty

Partners' actions constitute unfair methods of competition in violation of Massachusetts Unfair

Business Practices Act, Mass. Gen. Laws Ch. 93A, §§ 2 and 11.

97.     As part of their unfair competition, Alcorn and Armata attempt to avoid Prestige's

contractual obligations by 1) lulling RE/MAX New England into believing that they and Prestige

would sign renewal franchise agreements for the three (3) month-to-month franchises while they

2) prepared for a sudden departure from the RE/MAX system by, including without limitation,

renting new office space, entering into new contracts, designing new web sites, ordering new

signage and soliciting real estate agents to join them, so that they 3) could spring their

abandonment on RE/MAX New England with no advance notice and little opportunity to react.

The linch-pin for this strategy was their false and belated claim that the presence of a post-term

covenant against competition in the current RE/MAX New England franchise agreement

constructively terminated their ten (10) RE/MAX franchise agreements.  Defendants' actions

smack of a scheme acted upon for a substantial period of time while they were contractually

committed to use best efforts to enhance, and not undermine, their RE/MAX franchise

businesses.  This conduct constitutes unfair or deceptive acts or practices in the course of

business, trade, or commerce in violation of Massachusetts Unfair Business Practices Act, Mass.

Gen. Laws Ch. 93A, §§ 2 and 11.

98.     Prestige and LAER Realty Partners' actions, including their unauthorized use of

the RE/MAX Marks and Prestige's impermissible termination of ten (10) franchise agreements,

have caused and are likely to cause substantial injury to the public and to Plaintiffs, and Plaintiffs

are entitled to injunctive relief and to recover damages, punitive and compensatory, costs and

reasonable attorneys' fees.

99.     Alcorn and Armata are liable for any relief obtained against Prestige or LAER

Realty Partners by virtue of their direct obligations as Prestige Owners under the franchise

agreements for the Prestige Franchise Locations, by virtue of their guarantees of each of the

franchise agreements, and as the principal officers of Prestige and LAER Realty Partners who

directed its wrongful conduct.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that this Court:

(1)    Enter a judgment that Defendants have infringed the RE/MAX Marks pursuant to
the Lanham Act, 15 U.S.C. § 1114;

(2)    Enter a judgment that Defendants have engaged in false designation of origin and
unfair competition pursuant to the Lanham Act, 15 U.S.C. § 1125(a);

(3)    Enter judgment that Defendants have engaged in breach of contract;

(4)    Enter judgment that Defendants have engaged in unfair and deceptive trade
practices under Mass. Gen. Laws Ch. 93A, §§ 1-11;

(5)    Order Defendants to immediately close LAER Realty Partners pursuant to the in-term covenants against competition contained in ten (10) non-terminated RE/MAX New England franchise agreements and the post-term covenants against competition contained in three (3) holdover RE/MAX New England franchise agreements;

(6)    Preliminarily and permanently enjoin Defendants from:

    (a)    Using the RE/MAX Marks or any other confusingly similar copy, reproduction, colorable imitation, or simulation the RE/MAX Marks on or in connection with Defendants' goods or services;

    (b)    Using any trademark, service mark, name, logo, design, or source designation of any kind on or in connection with Defendants' goods or services that is a confusingly similar copy, reproduction, colorable imitation, or simulation of the RE/MAX Marks; and

    (c)    Using any trademark, service mark, name, logo, design, or source designation of any kind on or in connection with Defendants' goods or services that is likely to cause confusion, or to cause mistake, or to deceive, or public misunderstanding that such goods or services are produced or provided by Plaintiffs, or are sponsored or authorized by Plaintiffs, or are in any way connected or related to Plaintiffs.

(7)    Order Defendants to specifically perform their obligation to refrain from using any horizontal bar design in LAER Realty Partners' signs, trade dress or identity scheme;

(8)    Order Defendants to specifically perform their obligation to assign all telephone numbers used by the thirteen (13) Prestige Franchise Locations prior to the purported abandonment of the franchise agreements;

(9)    Order Defendants to specifically perform their obligation to transfer all domain names that Prestige has registered incorporating the RE/MAX Marks to RE/MAX New England or RE/MAX, LLC;

(10)    Order Defendants to cease all use of the RE/MAX Marks as part of any formal corporate or legal name;

(11)    Order Defendants to deliver up for impoundment and for destruction all signs, packages, receptacles, advertising, sample books, promotional material, catalogs, Internet websites, or other material in the possession, custody, or control of the Defendants that are found to adopt and infringe the RE/MAX Marks or that otherwise unfairly compete with Plaintiffs and their products and services;

(12)    Compel Defendants to account to Plaintiffs for any and all profits derived by Defendants from the offering of any goods/services under the RE/MAX Marks as described herein; award Plaintiffs all damages caused by the acts forming the basis of this Complaint, including, without limitation, Defendants' profits and Plaintiffs' actual damages;

(13)    Based on Defendants' knowing and intentional use of the RE/MAX Marks without authorization, award treble damages and enhancement of the Defendant's profits as provided for by 15 U.S.C. § 1117(a) and Mass. Gen. Laws Ch. 93A, § 11;

(14)    Order Defendants to pay Plaintiffs all costs and legal fees pursuant to Section 15.H of the franchise agreements including, without limitation, Plaintiffs' reasonable attorneys' fees and all costs and expenses incurred in the instant Action;

(15)    Order that Defendants pay Plaintiffs the costs of this action and Plaintiffs' reasonable attorneys' fees pursuant to 15 U.S.C. §1117(a) as an "exceptional case," and Mass. Gen. Laws Ch. 93A § 11 due to Defendants' knowing and intentional infringement of the RE/MAX Marks;

(16)    Order Defendants to pay all remaining payments of every type and description required under the ten (10) non-terminated RE/MAX New England franchise agreements through the end of the term of each;

(17)    Order Defendants to pay all remaining payments of every type and description required under the three (3) holdover RE/MAX New England franchise agreements;

(18)    Order Defendants to pay all amounts owed to RE/MAX, LLC, including, but not limited to, all past due annual dues payments required under the franchise agreements; and

(19)    Award Plaintiffs such further relief as the Court deems just, proper and equitable.

Respectfully submitted,

**RE/MAX OF NEW ENGLAND, INC.
and RE/MAX, LLC,**

By their attorneys,


_/s/  Arthur L. Pressman_
Arthur L. Pressman (BBO #643094)
apressman@nixonpeabody.com

28

Gina M. McCreadie (BBO #661107)
gmccreadie@nixonpeabody.com
Tarae L. Howell (BBO #679500)
thowell@nixonpeabody.com
NIXON PEABODY LLP
100 Summer Street
Boston, MA  02110-2131
(617) 345-1000
(617) 345-1300 (facsimile)

Dated:  May 13, 2014